UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA		Criminal Case No. 3:09-cr-153

vs.		Judge Timothy S. Black

DAVID C. BIGI    (1)
ROBERT J. BIGI  (2),

                Defendants.

## ORDER DENYING DEFENDANTS' MOTIONS TO SUPPRESS

David C. Bigi is charged in a Superseding Indictment with one count of conspiracy to engage in the interstate transfer of stolen property (18 U.S.C. § 371), 13 counts of interstate transportation of stolen property (18 U.S.C. §§ 2314 and 2), three counts of structuring financial transactions (31 U.S.C. § 5324(a)(3) and (d)(2)), 12 counts of money laundering (18 U.S.C. §§ 2 and 1957), and one count of conspiracy to launder money (18 U.S.C. § 1957). David Bigi's brother, Robert J. Bigi, is also charged under a number of these counts.

Defendant David Bigi has filed the following five motions to suppress:

(1)      Motion to Suppress Items Seized at David Bigi's Residence (doc. 45);

(2)      Motion to Suppress Evidence Seized by Search Warrant (doc. 50);

(3)      Motion to Suppress Search of Compaq Presario C700 Laptop Serial Number CND7382MTD (doc. 51);

(4)      Motion to Suppress Search of XION Desktop Computer Tower With No Visible Serial Number or Markings (doc. 53); and

(5)      Motion to Suppress Search of Storage Locker (doc. 52).

Defendant Robert Bigi also filed a single Motion to Suppress Evidence. (Doc. 60.) His motion, which contains a one-page memorandum, raises the same arguments and seeks to suppress the same evidence covered by David Bigi's second and fifth motions to suppress evidence.

The Government filed both an initial response to all of David Bigi's motions (doc. 66) and a supplemental response to David Bigi's motions to suppress (doc. 68).

The Court held an evidentiary hearing on the motions to suppress on May 12, 2010. Upon completion of the hearing, the Court ordered the filing of post-hearing briefs. The Government filed its post-hearing brief on July 19, 2010 (doc. 89); and the defendants filed their post-hearing briefs on August 31, 2010 (docs. 95 & 96), to which the Government replied (doc. 98).

Accordingly, the suppression issues are now ripe.

## 1. General Background Facts

On or about June 23, 2009, Detective Robert E. Large of the Vandalia Police Department initiated a local criminal investigation into a suspected product identification number (PIN) flipping scheme involving certain John Deere and Bobcat Skid Steers[1] owned by Vandalia Rental Co., of 950 Engle Road, Vandalia, Ohio. Detective Large eventually expanded the investigation to include other acts of PIN flipping on rental equipment owned by a variety of other equipment rental companies located throughout the Greater Miami Valley.

In early July 2010, as part of his investigation, Detective Large sought and obtained what the Government characterizes as eight document subpoenas from Magistrates Bonnie Beaman Rice and Fred M. Izenson of the Vandalia Municipal Court for certain telephone records and personal financial records concerning both David and Robert Bigi. Each of these eight document subpoenas issued following factually detailed, in-person, oral briefings provided by Detective Large to Magistrates Rice and Izenson, respectively.

On July 10, 2009, Detective Large arrested Defendant David Bigi on state criminal charges of tampering with identification numbers to conceal vehicle identification in violation of Ohio Rev. Code § 4549.62 (A), and receiving stolen property in violation of Ohio Rev. Code § 2913.51. This arrest stemmed from Defendant David Bigi's rental of a Bobcat Skid Steer from Art's Rental Co. of Poe Ave., Dayton, Ohio, which Bobcat Skid Steer Defendant David Bigi thereafter transported to a particular storage locker (later identified as Unit #55) at the Secure Store & Lock located at 7370 Bridgewater Road, Huber Heights, Ohio.

On the same day as David Bigi's arrest, officers went to his residence and confronted his wife. The officers allegedly obtained Bigi's wife's written consent to search the premises. During the search, officers found a safe that Mrs. Bigi did not have means to access. According to David Bigi, the officers then called him while he was still at the police station in Vandalia and threatened him that if he did not consent to the search of the safe they would get a warrant and rip the safe out of the residence. Accordingly, David Bigi gave the police access to the safe.

Subsequent to this arrest, Detective Large, together with the assistance of other police officers from the Fairborn, Beavercreek, Vandalia, Huber Heights and Middletown, Ohio Police Departments executed a number of searches. These search locations included Defendant David Bigi's residence at 1440 McCurdy Ct., Fairborn, Ohio, and storage locker #55.

---

[1] Skid steers are small motorized tractors typically used for a variety of purposes at construction sites. Skid steer manufacturers assign unique Product Identification Numbers (PINs) as opposed to Vehicle Identification Numbers (VINs). These vehicles are not otherwise licensed or registered as are traditional over-the-road vehicles.

## II. Motion to Suppress Items Seized at David Bigi's Residence (doc. 45)

In his first suppression motion, Bigi moves to suppress all evidence seized from his residence on the ground that the consent given by Bigi and his wife was not valid or consensual. Bigi challenges the validity of consent that his wife gave to the search of their marital residence, and alleges that he subsequently orally revoked any consent, and that the consent that he gave to the search of his safe was coerced and hence unlawful.

In general, the Fourth Amendment guarantees the right to be free from unlawful searches and seizures: "The right of the people to be secure in their persons, houses and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Above all, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980). Therefore, the Supreme Court has time and again held that warrantless searches and seizures inside a home are presumptively unreasonable. *See id.* at 586.

There are, however, limited exceptions to the warrant requirement in this context, such as where consent is obtained prior to the search (or, not applicable here, where exigent circumstances and probable cause are present). *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003) (consent); (*see also United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990) (exigence)).

"Consent from an individual whose property is to be searched or from a third party who possesses common authority over the premises validates a search that would otherwise be considered unreasonable and unconstitutional." *Schneckloth*, 412 U.S. at 219. "When seeking to justify a search based on consent, the government has the burden of showing by a preponderance of the evidence that the consent was 'freely and voluntarily given,' and was not the result of coercion, duress, or submission to a claim of authority." *United States v. Bueno*, 21 F.3d 120, 126 (6th Cir. 1994) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The determination of whether consent was entered into freely and voluntarily is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227.

The Fourth Amendment does not require police officers to advise subjects of their right to refuse a search. *See id.* at 231-32; *United States v. Drayton*, 536 U.S. 194, 206-07 (2002). Accordingly, to demonstrate voluntary consent, the government need not show that the defendant knew of his right to refuse consent. *Schneckloth*, 412 U.S. at 232-233. The Sixth Circuit has repeatedly held that an officer's threat to obtain a warrant if the defendant does not consent to the search does not taint the defendant's subsequent consent to a search, unless the threat is baseless. *See United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998) (citing a number of cases from other circuits); *United States v. Blanco*, 844 F.2d 344, 351 (6th Cir.), *cert. denied*, 486 U.S. 1046 (1988); *United States v. Watson*, No. 96-5037, 1997 U.S. App. LEXIX 17186 (6th Cir.), *cert.*

*denied*, 522 U.S. 961 (1997) ("Notifying a person that a warrant can be obtained does not render consent involuntary unless the threat to obtain the warrant is baseless."). Finally, the fact that an individual was in custody at the time of giving consent to a search does not, alone, render the consent involuntary. *Salvo*, 133 F.3d at 953-54 (citing *United States v. Watson*, 423 U.S. 411 (1976)).

Here, Mrs. Bigi's consent was freely given and was valid. Moreover, Mr. Bigi's consent to search the safe was freely given as the threat to get a warrant was not baseless. Accordingly, there is no basis to invalidate the search of the Bigi residence.

### III. Motion to Suppress Evidence Seized by Search Warrant (doc. 50)

David Bigi's Motion to Suppress Evidence Seized by Search Warrant (doc. 50) concerns the eight items characterized as "document subpoenas" by the Government. Bigi characterizes these documents as warrants rather than subpoenas and claims that they are facially deficient and are not supported by probable cause.

The eight disputed documents, all of which are attached to David Bigi's motion, are single-page court orders captioned "Order and Journal Entry." (Doc. 50 Exs. A-H.) All of the orders emanate from the Vandalia Municipal Court, Montgomery County, Ohio. Five were signed by Magistrate Bonnie Beaman Rice on July 2, 2009. (*Id.* Exs. A-E.) A sixth was signed by Magistrate Rice on July 9, 2009. (*Id.* Ex. F.) The remaining two were signed by Magistrate Fred M. Izenson on July 6 and 14, 2009. (*Id.* Exs. G, H.) The orders compel various personal financial records and telephone records from: (i) Cellco Partnership DBA: Verizon Wireless (*id.* Exs. A, B); (ii) Sprint Nextel (*id.* Exs. C, D); (iii) AT&T (*id.* Exs. E, F); (iv) Wright Patt Credit Union (*id.* Ex. G); and (v) and ebay and PayPal (*id.* Ex. H.) The orders were drafted by Detective Large on forms he had developed (*i.e.*, not on court forms).

Each of the eight orders indicates that the "Court finds that there are reasonable grounds to believe that the records and/or information sought is or are relevant and material to an ongoing investigation of violation of Ohio Revised Code." (*Id.* Exs. A-H.) The orders also specify that the request for records and/or information is not to be disclosed as any disclosure may impede the investigation.

Defendants Bigi argue that the orders should be treated as search warrants. As such, Bigi claims that the "warrants" are facially invalid because they lack any recitation of probable cause and are not supported by an affidavit. Bigi also argues that the "warrants" were utilized improperly to obtain evidence that was beyond the territorial jurisdiction of the Vandalia Municipal Court.

The Government argues that the orders in question constitute subpoenas rather than warrants and therefore are not subject to the Fourth Amendment warrant requirements. Instead, the Government maintains that the subpoenas are limited only by the general reasonableness standard of the Fourth Amendment.

-4-

Indeed, "whereas the Fourth Amendment mandates a showing of probable cause for the issuance of search warrants, subpoenas are analyzed only under the Fourth Amendment's general reasonableness standard." *Doe v. United States*, 253 F.3d 256, 263-64 (6th Cir. 2001). As the Sixth Circuit has explained, "[o]ne primary reason for this distinction is that, unlike 'the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant[,]' the reasonableness of an administrative subpoena's command can be contested in federal court before being enforced." *Id.* at 264 (quoting *In Re Subpoena Duces Tecum*, 228 F.3d 341, 347-49 (4th Cir. 2000)); *see also Donovan v. Lone Steer*, 464 U.S. 408, 415 (1984). This principle extends to subpoenas to third-parties entities other than the subject of the investigation. *See United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993).

A defendant seeking to challenge a third-party subpoena has "standing to dispute [its] issuance on Fourth Amendment grounds" only if he can "demonstrate that he had a legitimate expectation of privacy attaching to the records obtained." *Id.*; *see also United States v. Miller*, 425 U.S. 435, 444 (1976) ("Since no Fourth Amendment interests of the depositor are implicated here, this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant."). Generally, "when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information." *United States v. Jacobsen*, 466 U.S. 109, 117 (1984). For example, in *Phibbs*, the Sixth Circuit held that the defendant did not have a reasonable expectation of privacy in his credit card statements and telephone records because "information contained within them was readily accessible to employees [of the third-party business] during the normal course of business." 999 F.2d at 1077-78. Accordingly, the defendant lacked standing to challenge the government's use of the subpoenas. *Id.*

Subpoenas for documentary evidence fit within two categories: (1) those that are investigative in nature and filed without knowledge by the party against whom they are sought; and (2) those that involve the production of documents after proceedings have begun to order the witness to produce any books, papers, documents, data or other objects the subpoena designates. As to the latter, such a subpoenaed party may file a motion to quash a subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. P. 17(c)(1). As to the former, the fundamental safeguard against investigative subpoenas is that they are only available to certain, limited agencies which have been granted authority expressly by statute to issue third-party investigative subpoenas. Here, however, the Government cannot point to any statute that would authorize the police to issue their own investigative subpoenas. Indeed, the only such subpoena authority available for law enforcement is through a "grand jury subpoena" - *see* Ohio Revised Code § 2939.12 - which investigative tool is not implicated in this case.

Although the Government points to Ohio Revised Code § 2937.19 as providing authority to a judge or magistrate to issue a subpoena for documents or witnesses, the statute is clear that such subpoenas are only authorized for hearings pending before the court. Here there were no cases pending before the Municipal Court.

A search warrant, as opposed to a subpoena, is "an order in writing, issued by a justice or magistrate, authorizing law enforcement to search for and seize any property that constitutes evidence of the commission of a crime." *Black's Law Dictionary* (6th ed. 1990) at 1350. A search warrant is explicitly restricted by the Fourth Amendment, and a subpoena cannot be utilized as a vehicle to circumvent the constitutional rights attached to a search warrant.

The law is well-settled that "[t]he right to be let alone - the most comprehensive of rights and the most valued by civilized man - is not constrained literally to search and seize as such, but extends to the orderly taking under compulsion of process." *United States v. Morton Salt*, 338 U.S. 632, 651-52 (1949) (citing *Olmstead v. United States*, 227 U.S. 438, 471 (1928) and *Boyd v. United States*, 116 U.S. 616 (1886)). Thus, administrative subpoenas do implicate Fourth Amendment rights.

Here, the "court orders" were not lawful subpoenas but were rather *de facto* search warrants. As such, the Fourth Amendment required that the orders not issue without the presentation of an affidavit establishing probable cause. Here, the Government admits that no written matters were ever submitted to the court to obtain the orders to seize records - no motion, no affidavit, no nothing but for an oral briefing (not alleged nor evidenced to have been presented under oath), after which the magistrates signed the court orders which Detective Large had himself drafted.

Therefore, the Court concludes that the conduct here, notwithstanding that it is reflective of "a common practice since I [Large] became a detective," fails constitutional muster. The court orders to produce Defendants' records were not lawfully obtained.

However, an illegal search only violates the rights of those who have "a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Here, neither Defendant has any legitimate expectation of privacy in the financial, telephone, E-Bay or Pay Pal records maintained by third party entities.

Individuals generally cannot reasonably expect to retain control over information revealed to third parties, even if the senders have a subjective expectation that third parties will keep the information confidential. *United States v. Miller*, 425 U.S. 435, 443 (1976). Where the party challenging the disclosure has voluntarily disclosed his records to a third party, he maintains no expectation of privacy in the disclosure vis-a-vis that individual, and he assumes the risk of that person disclosing (or being compelled to disclose) the shared information to the authorities. *United States v. Jacobson*, 466 U.S. 109, 117 (1984). Thus, there is no reasonable expectation of privacy in telephone records, *see Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir. 1998). Likewise, there is no expectation of privacy in customer account records maintained and held by Western Union, and they are not entitled to Fourth Amendment protections. *See In re Grand Jury Proceedings*, 827 F.2d 301, 302-03 (8th Cir. 1987). Likewise, bank customers have no property interest or legitimate expectation of privacy in subpoenaed bank records that would give rise to Fourth Amendment protection. *Miller*, 425 U.S. 435. In sum, when a person communicates information to a third party, even on

-6-

the understanding that the communication is confidential, he cannot object when the third-party conveys that information or records to law enforcement authorities. *Id.* at 443.

Here, neither Defendant can show legal standing to assert a Fourth Amendment violation for the third-party entities holding certain financial, telephone, E-Bay or PayPal records.[2] Lacking any reasonable expectation in the seized documents, the seizure of the documents does not violate the Fourth Amendment rights of either Defendant.

### IV. Motion to Suppress Search of Compaq Presario C700 Laptop Serial Number CND7382MTD (doc. 51)

David Bigi's third motion is a motion to suppress the evidence discovered from a search of his Compaq Presario laptop. According to Defendant, on July 27, 2009, Detective M.G. Brown of the Beavercreek Police Department obtained and executed a search warrant to search a computer described as a Compaq Presario C700 Laptop Serial Number CND7382MTD. The warrant and four-page warrant affidavit are attached to Bigi's motion.

Upon first glance, there appear to be several problems with the warrant. As Defendant points out, the warrant itself, which was issued by Fairborn Municipal Court Judge Larry W. Moore, Jr., is dated July 24, 2009, while the affidavit submitted by Detective Brown in support of the warrant is dated July 29, 2009. In other words, the warrant affidavit is dated five days after the date the warrant was actually issued and two days after the alleged date of execution.

However, Judge Moore testified at the suppression hearing that he simply made a clerical error in stating the date of Detective Brown's execution of the affidavit to be July 29, 2010, when, in truth, the date of execution was July 24, 2010. (*See* Doc 80, Tr. of May 12, 2010 hearing at pp.27-28). A mere clerical error such as the one here does not render unconstitutional the search conducted pursuant to the mis-dated warrant. *See Knott v. Sullivan*, 418 F.3d 561, 569 (6th Cir. 2005) (citing *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998)).

Bigi also agues that the warrant is an impermissible extraterritorial warrant because it was issued by a judge from the Municipal Court in Fairborn, Ohio for property located in Beavercreek, Ohio. Bigi cites *State of Ohio v. Jacob*, 185 Ohio App. 3d 408, 413 (Montgomery Cty. Dec. 30, 2009), as prohibiting extraterritorial warrants.

---

[2] When referring to whether or not the defendants have an expectation of privacy, the Court uses the word "standing" because courts routinely use "standing" as "shorthand for the existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claims." *United States v. Daniel*, 982 F.2d 146, 149 n.2 (5th Cir. 1993). Notwithstanding the use of the word "standing" in this Order, the Court acknowledges that "the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law." *Rakas*, 439 U.S. at 140 (citations omitted).

However, based on the warrant, it appears that the Compaq Presario C700 Laptop was originally seized from Bigi's Fairborn, Ohio residence. The laptop apparently was only moved to Beavercreek, Ohio after being seized by officers during the search of Bigi's residence. Moreover, The Fairborn Municipal Court possesses the necessary geographical jurisdiction to issue search warrants for property located in Beavercreek, Ohio. *See* Ohio Revised Code § 1901.02(B). Accordingly, the warrant issued from the proper court.

Finally, Bigi argues that the warrant is not supported by probable cause and does not specify what type of evidence the Government seeks or any time frame for the items to be searched. However, with regard to the probable cause challenge, the warrant affidavit sets forth sufficient facts to demonstrate probable cause.

With regard to the overbreadth argument, the warrant authorizes a forensic analysis of the laptop to search for evidence of theft, receiving stolen property, and engaging in a pattern of corrupt activity. The Fourth Amendment by its terms requires that a warrant describe with particularity the places to be searched and items to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional"). Generally, the government cannot rely on a warrant affidavit to cure an overbroad warrant. *See Groh*, 540 U.S. at 557; *United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999) ("The Fourth Amendment requires that *the warrant* particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant" (emphasis in original)). However, such reliance is permitted where the warrant actually cross-references the affidavit. *Groh*, 540 U.S. at 557-58 ("Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."); *United States v. Blakeney*, 942 F.2d 1001, 1025-26 (6th Cir. 1991); *United States v. McGrew*, 122 F.3d 847, 849-50 (9th Cir. 1997); *United States v. Williamson*, 1 F.3d 1134, 1136, n. 1 (10th Cir. 1993); *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990); *United States v. Curry*, 911 F.2d 72, 76-77 (8th Cir. 1990); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980). In this case, the warrant does specifically reference Detective Brown's affidavit. Accordingly, here, the affidavit cures any overbreadth in the warrant itself.

### V. Motion to Suppress Search of XION Desktop Computer Tower With No Visible Serial Number or Markings (doc. 53)

Bigi filed a similar motion to suppress evidence seized from the search of his XION desktop computer. Like Bigi's laptop, police officers appear to have seized Bigi's desktop computer during the search of his residence. It then appears that Detective Brown applied for a warrant to search the desktop computer. The warrant and related documents are attached to Bigi's motion. Again, there are discrepancies in the dates of the documents. The warrant for the desktop computer was also issued by Fairborn Municipal Court Judge Larry W. Moore, Jr. and is dated July 29, 2009. Detective Brown's affidavit pertaining to the XION desktop computer is

-8-

also dated July 29, 2009. However, a return of search warrant and receipt/inventory list are both dated July 27, 2009 – two days prior to the date on the warrant. Moreover, the return of search warrant indicates that the warrant was executed and received on July 24, 2009.

At the evidentiary hearing on May 12, 2010, Judge Moore testified that he misdated the execution of Detective Brown's affidavit and the warrant as July 29, 2010, when, in truth, these executions occurred on July 24, 2010. (*See* Doc. 80, Tr. at 29-30). And, again, a mere clerical error such as the one here does not render unconstitutional the subsequent search. *See Knott v. Sullivan*, 418 F.3d 561, 569 (6th Cir. 2005) (citing *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998)). Moreover, Bigi's additional arguments to suppress the search of the desktop computer are the same as his arguments to suppress the search of the laptop, and they fail for the same reasons set forth above.

## VI. Motion to Suppress Search of Storage Locker (doc. 52)

David Bigi's last motion to suppress concerns the search of a storage locker located at Secure Lock & Store, 7370 Bridgewater Road, Huber Heights, Ohio. Police Officers obtained a warrant to search this storage locker after their investigation led them to suspect that David and Robert Bigi were involved in a scheme wherein they stole various model Skid Steers from construction lots, and switched the visible PIN plates on the stolen Skid Steers with PIN plates from rental Skids. (*See* Affidavit for Search Warrant, Doc. 52 at 10.) During the investigation, the officers also learned that David Bigi rented storage unit # 55 at Secure Lock & Store and that Bigi had been spotted towing a Skid Steer to that location. (*See id.*)

On July 9, 2010, Judge James Hensley, Jr. from the Montgomery County, Ohio Court issued a warrant to search the storage locker. The warrant, along with a supporting affidavit signed by Detective Brian Krimm, and a return and inventory sheet, are attached to David Bigi's motion. Defendant David Bigi argues that the warrant is deficient for several reasons.

First, David Bigi points out that the affidavit is dated July 10, 2009, a day after the warrant was issued. Again, however, at the evidentiary hearing Judge Hensley testified that he misdated the warrant as July 9, 2010, when he actually signed and issued the warrant on July 10, 2010. (*See* Doc. 80, Tr. at 12-13). And, again, a mere clerical error such as the one here does not render unconstitutional the subsequent search. *See Knott v. Sullivan*, 418 F.3d 561, 569 (6th Cir. 2005) (citing *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998)).

Next, Bigi argues that the warrant affidavit contains uncorroborated hearsay, although Bigi does not specifically identify the statements that he considers to be hearsay. Bigi cites, without providing any pinpoint citation, *Illinois v. Gates*, 462 U.S. 213 (1983). However, the mere fact that an affidavit contains hearsay does not in and of itself invalidate the affidavit. Hearsay may be used to establish probable cause in a warrant as long as the affidavit also demonstrates a substantial basis for crediting the hearsay. *See Jones v. United States*, 362 U.S. 257, 269 (1960); *Spinelli v. United States*, 393 U.S. 410, 412-13 (1969) (abrogated on other

-9-

grounds by *Illinois v. Gates*, 462 U.S. 213 (1983));*United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) ("It is well established that a magistrate may rely on hearsay evidence in making his probable cause determination."); *United States v. Shaw*, 464 F.3d 615, 623 (2006); *United States v. Bullock*, 130 F. App'x 706, 719-20 (6th Cir. 2005); *United States v. Moore*, 452 F.2d 569, 572 (6th Cir. 1971). Here, there was a substantial basis for crediting Detective Brown's affidavit.

Defendant next argues that there are insufficient facts in the affidavit to establish probable cause to believe that any contraband or other evidence was stored in the locker. However, with regard to the probable cause challenge, the warrant affidavit sets forth sufficient facts to demonstrate probable cause.

David Bigi's third argument is that the search warrant is overbroad in that "it authorizes a search for things for which there is no probable cause to search." Bigi does not specify the "things" to which he refers. The warrant authorizes a search for the following property:

(1) Any and all Skid Steer heavy equipment to include but not limited to, Bobcat and John Deere Models.
(2) Various VIN plates going to such Bobcat and John Deere Skid Steer heavy equipment.
(3) Any and all tools used to remove VIN plates from a Bobcat and John Deere Skid Steer.
(4) Any and all documentation related with the purchase or sale of a Bobcat and John Deere Skid Steer.
(5) Any and all banking instruments, to include but not limited to check books and account statements.

(*See* Doc. 52 at 4.) In light of the nature of the investigation described in the warrant affidavit, the items to be seized are not overbroad. The first four are directly related to the suspected scheme to steal Skid Steers, switch the PIN numbers with those of rental Skid Steers, and sell the stolen equipment. The final category of items, while broad, is permissible as relating to evidence involving the sale of the stolen equipment.

Defendant Bigi's final argument is that the Court should hold a *Franks* hearing to determine whether the affidavit submitted in support of the warrant contains statements that are false or that were made with reckless disregard for the truth. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a party may challenge the veracity of a search warrant affidavit only upon a substantial preliminary showing that a false statement was included knowingly and intentionally or with reckless disregard for its truth and that the allegedly false statement was necessary for a finding of probable cause. *See also United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (construing *Franks*). In this case, David Bigi failed to make this showing at the comprehensive evidentiary hearing.

-10-

**VII. Conclusion**

Accordingly, for the reasons set forth herein, the Defendants' motions to suppress (docs. 45, 50, 51, 52, 53, and 60) are hereby **DENIED**.

**IT IS SO ORDERED.**

Date: September 22, 2010

*Timothy S. Black*
Timothy S. Black
United States District Judge