UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:09-cr-153 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| DAVID C. BIGI (1), | : | |
| ROBERT J. BIGI (2), | : | |
| | : | |
| Defendants. | : | |

**ORDER AND ENTRY DENYING DEFENDANTS' JOINT MOTION TO DISMISS
INDICTMENT PURSUANT TO THE COURT'S SUPERVISORY POWERS (DOC. 224)**

This case is before the Court on the Defendants' Joint Motion to Dismiss the Indictment

Pursuant to the Court's Supervisory Power. (Doc. 224). Defendants assert that the cumulative

effect of numerous incomplete discovery productions and discovery violations have denied them

due process. The Government responds by admitting to certain irregularities during the

discovery process, but argues that such irregularities do not amount to longstanding, flagrant

misconduct and that Defendants' rights to due process have not suffered substantial prejudice.

(Doc. 237). The Motion to Dismiss is now ripe for the Court's decision, with jury trial set to

begin in three days (on August 1, 2011).

Courts may dismiss an indictment with prejudice pursuant to its supervisory powers

"even 'if the [government's] conduct does not rise to the level of a due process violation[.]'"

*United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (citing *United States v. Chapman*,

524 F.3d 1073, 1084 (9th Cir.2008)). "Under certain circumstances, courts may exercise their

supervisory power to dismiss a grand jury indictment." *United States v. Rozin*, 552 F.Supp.2d

693, 699 (S.D. Ohio 2008) (citing *United States v. Streebing*, 987 F.2d 368, 372-73 (6th Cir.

1993)). The Court's supervisory power stems from a court's "inherent ability . . . to formulate

procedural rules not specifically required by the Constitution or Congress to supervise the

administration of justice." *Id.* "However, while a court may use its supervisory power to

dismiss an indictment, dismissal is, generally speaking, a disfavored remedy." *Id.*

(citing *United States v. Rogers*, 751 F.2d 1074 (9th Cir.1985)). To dismiss an indictment pursuant to the Court's supervisory powers, "there must be a showing of 'demonstrated and longstanding prosecutorial misconduct' as well as a showing of substantial 'prejudice to the defendant.'" *Id.*

## A. Joint Investigation and Sham Prosecution

The Court will first address Defendants' contention that they have suffered prejudice as a result of numerous misrepresentations by law enforcement and non-disclosures by the Government with regard to timing, scope and extent of FBI involvement in 'state' investigations of Defendants. Defendants' argument in this regard directly addresses an argument made throughout the entirety of this criminal proceeding asserting that the so-called "sham prosecution" exception to the dual sovereign doctrine applies in this case, and, therefore, Defendant David Bigi's Fifth Amendment rights under the double jeopardy clause have been violated.

The dual sovereign doctrine provides "'that the double jeopardy clause does not apply to suits by separate sovereigns, even if both are criminal suits for the same offense.'" *United States v. Mardis*, 600 F.3d 693, 696 (6th Cir. 2010) (citing *United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 587 (6th Cir.1991)). In other words, "prosecution in both state court and federal court for offenses that would otherwise constitute the same 'offense' under the Fifth Amendment if tried successively in the same forum is constitutional under the dual sovereignty doctrine." *Id.* (citing *Heath v. Alabama*, 474 U.S. 82, 88-89 (1985)).

There is a possible "very limited exception to the dual sovereignty doctrine" suggested in *dicta* within the Supreme Court case of *Bartkus v. Illinois*, 359 U.S. 121 (1959). That "very limited exception" is typically referred to as "the 'sham prosecution' exception[.]" *Mardis*, 600 F.3d at 697. The purported sham prosecution, as noted by the Supreme Court in *dicta*, applies where one sovereign "in bringing its prosecution was merely a tool of" a separate sovereign.

-2-

*Bartkus*, 359 U.S. at 123-24. With regard to the purported sham prosecution exception, the Sixth

Circuit recently stated that:

> While no court has found that cooperation between sovereigns in the
> investigation and the timing and planning of successive prosecutions of an
> individual for related offenses violates the dual sovereignty doctrine, it is
> not impossible that it could occur. One can imagine a situation in which
> Sovereign A failed to secure a conviction and therefore takes its evidence
> and charges to Sovereign B for another bite at the apple in a way that does
> constitute a sham prosecution. Such circumstances, in which Sovereign A
> pulls the strings of Sovereign B's prosecution, may indeed violate the Fifth
> Amendment's ban on double jeopardy.

*Mardis*, 600 F.3d at 697.

> Even the Supreme Court in *Bartkus* found such exception inapplicable where:

> the defendant was tried and acquitted by a federal court and a state grand
> jury indicted him for the same conduct less than a month later. After the
> federal acquittal, federal investigators turned over their evidence and
> evidence acquired after the acquittal to the state prosecutors. The federal
> court also delayed sentencing two accomplices until they had testified at
> the state trial.

*Id.* (citing *Bartkus*, 359 U.S. at 122-23). In so concluding, the Supreme Court stated that the

level of cooperation between the two sovereigns "was 'conventional practice between the two

sets of prosecutors throughout the country[.]'" *Id.* (citing *Bartkus*, 359 U.S. at 122-23).

Here, Defendant David Bigi originally argued application of the sham prosecution

exception in his Motion to Dismiss for Double Jeopardy, filed on September 20, 2010. (Doc.

99). Defendant argued that his prosecution and conviction in state court "was in fact a sham

federal prosecution" based on FBI involvement with state investigators.

The Court denied Defendant's motion finding that the cooperative investigations between

state and federal law enforcement was an acceptable use of resources that the courts have found

to be lawful and acceptable. Further, based on the record and the testimony before the Court at

that time, the Court concluded that the state and federal prosecutions proceeded independently.

(Doc. 106).

Now Defendants again raise the applicability of the sham prosecution exception arguing that additional evidence later uncovered by Defendants reveals misrepresentations by law enforcement as to the date of initial federal involvement in the investigation and the degree of federal involvement in David Bigi's state prosecution. (Docs. 205, 224).

At the initial suppression hearing in May 2010, Special Agent Wendy Surikov of the FBI testified that she had "no official involvement in the investigation" of Defendants on July 10, 2009, that the FBI did not formally open a file on Defendants until August 31, 2009, and that the FBI had no control over state or local investigations before August 31, 2009. (Doc. 80). Agent Surikov did testify that she had conversations with state law enforcement regarding the investigation of Defendants before that date.

Contrary to Agent Surikov's testimony regarding the official opening of an FBI file, Defendants, in April 2011, uncovered an affidavit of Agent Surikov dated October 6, 2009, which states that "[b]eginning on or about August 8, 2009, your Affiant formally opened a criminal investigation into alleged criminal activities committed" by Defendants. (Doc. 224-8). Further, Defendants later uncovered documents in an open file discovery process provided by the Government, as well as Defendants' individual investigations for local police reports, that the FBI was cooperating with local law enforcement months earlier than August 2009.

Defendants also supplemented earlier Motions with an affidavit of Defendant David Bigi's counsel in the state prosecution, Adrienne Brooks. In that affidavit, attorney Adrienne Brooks testifies that: "John [Amos, Assistant Montgomery County Prosecutor] told me [in August 2009] that he could not offer Diversion because the "feds were looking at" Mr. Bigi." (Doc. 205-1).

Even in light of the foregoing, the Court continues to find that the "very limited" sham prosecution exception to the dual sovereignty doctrine does not bar this prosecution here. The documents uncovered by Defendants with regard to the FBI's involvement in the investigation of

-4-

Defendants continue to show no more than mere cooperation between state and federal law enforcement. Any inconsistencies or purported misrepresentations made by law enforcement officers during proceedings in this case are potential issues for cross-examination, but they do not rise to the level of prejudice requiring dismissal of the indictment.

Notwithstanding the affidavit testimony of David Bigi's attorney in the state proceedings, which Defendants offer to prove that federal prosecutors or federal law enforcement "controlled" the state prosecution, the affidavit offered fails to demonstrate that federal prosecutors or federal law enforcement were involved in plea negotiations at all, or even involved to such a significant extent that the federal prosecutors or law enforcement "controlled" the state prosecution. Moreover, even assuming federal involvement in the state plea negotiations, Defendants cite no authority for the proposition that such involvement results in application of the sham prosecution exception to the dual sovereignty doctrine. In fact, the only authority considering federal involvement in state plea negotiations is the case of *Mardis*, 600 F.3d at 698, wherein a *defendant argued* that "when [a federal prosecutor] became involved in the state plea agreement in any capacity, double jeopardy prohibited future federal claims arising from these facts." The Sixth Circuit, in merely addressing the argument advanced by defendant on appeal, rejected the defendant's assertion, finding that the federal prosecutor was involved in plea negotiations solely at defendant's invitation. *Id.* Thus *Mardis* does not support the proposition that involvement of federal prosecutors in state *plea negotiations* invokes application of the sham prosecution doctrine in this case.

Accordingly, the Court continues to find that the sham prosecution doctrine does not apply here.[1]

---

[1] Perhaps notably, Defendants have never addressed whether the state offense and the federal offenses charged against David Bigi would otherwise constitute the same offense for Fifth Amendment double jeopardy purposes.

### B. **Suppression Hearing Held May 2010**

Defendants argue that they have suffered substantial prejudice as a result of the
Government's failure to produce a number of documents and materials either at or before the
initial suppression hearing in May 2010. Without substantially delving into the procedural
background of the case, the documents and materials at issue in Defendants arguments include:
(1) written statements of Detective Large; (2) a type-written narrative of Detective Mark Brown;
(3) copies of additional search warrants and search warrant affidavits signed by Judge Moore and
Detective Mark Brown; (4) federal grand jury testimony of Detective Large and FBI Agent
Surikov; (5) state grand jury testimony of Detective Large; and (6) the affidavit of Agent Surikov
of dated October 6, 2009, stating that "[b]eginning on or about August 8, 2009, your Affiant
formally opened a criminal investigation into alleged criminal activities committed" by
Defendants. (Doc. 224-8). The Court will address each in turn.

With regard to the narrative of Detective Brown and the additional search warrants and
search warrant affidavits referenced by Defendants, the Court previously granted reconsideration
of suppression issues in that regard. (Doc. 148). In fact, the Court held an evidentiary hearing on
March 22, 2011, wherein Defendant recalled and reexamined a number of witnesses, including
Judge Moore and Detective Brown, and both were extensively examined with regard to those
documents. (Doc. 161). Accordingly, the Court finds no prejudice to Defendants as a result of
the Government's failure to produce these documents at or before the initial suppression hearing.

With regard to the federal grand jury testimony of Detective Large, Defendants were each
given the opportunity to reexamine Detective Large following the Court's Order requiring the
Government to turn over Detective Large's federal grand jury testimony. (Doc. 74). The date for
requesting reexamination of Detective Large was subsequently extended upon Defendants'
Motions. (Docs. 75, 76, 77, 78). Defendants never availed themselves of this opportunity.
Accordingly, the Court finds no prejudice to Defendants as a result of the Government's failure
to produce timely Detective Large's federal grand jury testimony.

With regard to the various versions of case narratives and other "notes" authored by Detective Large, Defendants state that these materials "came to light after witnesses took the stand during the [initial] suppression hearing." (Doc. 224). Again, Defendants were given the opportunity to request reexamination of Detective Large and never availed themselves of that opportunity. Accordingly, the Court finds no substantial prejudice to Defendants.

With regard to the state grand jury testimony, the Court has addressed this issue on multiple occasions. Consistent with those Orders, the Court finds no prejudice to Defendants. (Doc. 183). Finally, with regard to the affidavit of Agent Surikov, the Court finds no prejudice for the reasons set forth by the Court in finding the sham prosecution exception inapplicable to this case.

### C. Source of eBay Records

Defendants also assert substantial prejudice resulting from the Government's purported failure to disclose the true source of eBay and PayPal records relied upon by Detective Large in providing testimony before the grand jury in October 2009. Defendants argue that the only documents known to be in the hands of law enforcement at the time of the grand jury proceedings were those documents obtained from eBay as the result of Orders and Entries issued by the Vandalia Municipal Court.

Previously the Court ordered the Government to "produce for the Court's inspection . . . copies of all documents obtained by law enforcement in response to the Orders and Journal Entries issued to: Cellco Partnership, DBA Verizon Wireless; Sprint Nextel; AT&T; **eBay and PayPal**." (Doc. 160) (emphasis added). In response, the Government produced documents relating only to Robert Bigi and Linda Bigi. In that production, there were no documents relating to David Bigi, despite the fact that Detective Large testified that transactions involving the subject skid steers occurred only on David Bigi's eBay account. Naturally, Defendants questioned the source of information upon which Detective Large's grand jury testimony was based.

-7-

Yesterday, on July 26, 2011, the Government provided a supplemental disclosure to the Court's Order requiring production of eBay and PayPal records obtained in response to the Orders and Entries. The supplemental disclosure includes eBay records of David Bigi from May 2006 through July 24, 2009. The Government represents that these documents were received by law enforcement as a result of the Order and Entry issued to eBay on July 14, 2009, and, in fact, the documents themselves indicate that the evidence was gathered on July 24, 2009. The Government represents that these records have been previously produced to Defendants as early as November 2009, and were produced again in November 2010 and on July 26, 2011. The Government explains that its failure to produce these documents to the Court as ordered on March 22, 2011 was merely inadvertent.

While the Court is troubled by the Government's incomplete production in response to its Order of March 22, 2011 (Doc. 160), given that these documents apparently have been in Defendants' hands since November 2009, the Court finds no prejudice to Defendants.

### D. Incomplete Police Reports

Finally, the Court finds no substantial prejudice to Defendants as a result of the Government's failure to secure and produce updated local police reports to Defendants. Defendants' arguments regarding prejudice resulting from the Government's purported failure in this regard again focus on information in those updated reports regarding the FBI's involvement in investigating Defendants in conjunction with state and local law enforcement. As set forth above, the Court continues to find that such information reveals no more than a cooperative effort between state and federal law enforcement, and such cooperation is acceptable and does not invoke application of the sham prosecution exception.

Accordingly, the Court finds that no substantial prejudice to Defendants resulted from the Government's failure to provide updated local police reports to Defendants.

**E. Conclusion**

For all of the foregoing reasons, Defendants' Joint Motion to Dismiss the Indictment is

**DENIED**.

**IT IS SO ORDERED.**

Date: July 27, 2011

Timothy S. Black
United States District Judge